IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

*Plaintiff,*

vs.

RUDOLPH BEACH, III, and
TIMOTHY LAWRENCE.

*Defendants.*

Case No. 09-10132-11, 14-EFM

**MEMORANDUM AND ORDER**

Presently before the court is Defendant Rudolph Beach, III's (Beach's) and Timothy Lawrence's (Lawrence's) sentencing memorandums in which each asks the Court to declare that the Fair Sentencing Act of 2010[1] (FSA) is retroactive. At the sentencing hearing on March 2, 2011, this Court listened to arguments from the parties, and ordered the United States to submit a written response to Defendants' memorandum, which had been filed just before the hearing. The United States has since filed a written response brief. For the reasons stated below, the Court grants the request and holds that the FSA is retroactive to offenders whose criminal conduct occurred prior to the enactment of the FSA, but who are sentenced after November 1, 2010. As such, defendants Beach and Lawrence are not subject to the mandatory minimums previously required.

---

[1] Pub.L. No. 111-220, 124 Stat. 2372 (2010).

## I. Background

On December 2, 2009, Beach, Lawrence, and others were indicted on various offenses, including possession with intent to distribute cocaine base. On March 30, 2010, and May 25, 2010, First and Second Superseding Indictments were returned, alleging additional criminal activity. On November 9, 2010, both defendants pleaded guilty to several charges, including distribution or conspiracy to distribute 50 grams or more of cocaine base, triggering a mandatory minimum sentence of 10 years pursuant to the Anti-Drug Act of 1986.[2] On August 3, 2010, however, the FSA was signed into law, and amended prior drug statutes by establishing new quantity thresholds for mandatory minimum sentences. Specifically, quantities of cocaine base triggering the statutory mandatory minimum sentence of five years increased from 5 grams under the previous law to 28 grams under the FSA. Similarly, quantities of cocaine base triggering the statutory mandatory minimum sentence of ten years increased from 28 grams under the previous law to 280 grams under the FSA. Moreover, Congress directed the United States Sentencing Commission (Commission) to promulgate emergency amendments to the Guidelines within 90 days of enactment, i.e. by November 1, 2010.

Thus, the issue before the court is which mandatory minimum thresholds apply to these defendants: (1) the lower thresholds found in 21 U.S.C. § 841(b)(1)(B) that were in place on the date of the offense conduct giving rise to the charges in this case and requiring a ten-year mandatory minimum, or (2) the higher thresholds found in the FSA and the amended Guidelines, requiring a five-year mandatory minimum, that are in effect on the date of sentencing.

---

[2] Pub. L. 99-570, 100 Stat. 3207-02 (1986), codified at 21 U.S.C. § 841.

## II. Analysis

The preamble to the FSA states it is "[a]n Act [t]o restore fairness to Federal cocaine sentencing." The FSA did this, in large part, by raising the quantities of cocaine base required to trigger various statutory mandatory minimum sentences from a 100:1 to an 18:1 "crack-to-powder" ratio. Additionally, the FSA expressed urgency in its enactment by providing the Sentencing Commission with emergency authority to promulgate all necessary Guideline amendments to conform with the new law within 90 days of the FSA's enactment, *i.e.,* by November 1, 2010. The Commission complied and amended the Guidelines, reducing the base offense levels for various quantities of cocaine base, which are based explicitly upon the FSA's new mandatory minimum sentences. These amended Guidelines became effective November 1, 2010, and apply to all offenders sentenced after that date, even if those offenders committed their offenses before enactment of the FSA on August 3, 2010.[3]

It has been clearly established that the FSA is not retroactive with respect to offenders who were already sentenced prior to its enactment.[4] The FSA is silent, however, on whether the new statutory minimums should apply to all sentencings after November 1, 2010, regardless of the date of the offense, or whether it should instead apply only to sentencings after November 1, 2010, involving criminal conduct occurring after August 3, 2010. This is precisely the issue before this court. The defendants, Beach and Lawrence, face post-November 1, 2010, sentencing for pre-August 3, 2010, conduct subject to statutory minimums. Defendants argue that Congress clearly intended the FSA to apply to all sentencings going forward, regardless of the date of the offense,

---

[3]*See* 18 U.S.C. § 3553(a)(4)(ii).

[4] *See, e.g., United States v. Lewis*, 625 F.3d 1224, 1228 (10th Cir. 2010).

while the Government argues that the omission of a retroactivity provision mandates that it only apply to conduct occurring after the enactment of the FSA.

The Government bases its argument, in large part, on the general saving statute, which provides:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.[5]

The saving statute was enacted to "abolish the common law presumption that the repeal of a criminal statue resulted in the abatement of 'all prosecutions which had not reached final disposition . . . ."[6] Although the saving statute states that Congress must "expressly provide" for retroactivity, the Supreme Court has clarified that the saving statute should not be used to frustrate congressional intent and "cannot justify a disregard of the will of Congress as manifested either expressly or by *necessary implication* in a subsequent enactment."[7] Accordingly, Congress can make a statute retroactive without the use of talismanic words, as long as it clearly signals its intent some other way by fair implication.[8] Therefore, even with no express provision in the FSA, the law can still apply retroactively, notwithstanding the saving statute, if Congress's intent for retroactivity is present by fair or necessary implication. Additionally, there is no saving clause in the FSA itself. Rather,

---

[5] 1 U.S.C. § 109.

[6] *Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 660 (1974) (quoting *Bradley v. United States*, 410 U.S. 605, 607 (1973)).

[7] *Great N. Ry. Co. v. United States*, 208 U.S. 452, 465 (1908) (emphasis added).

[8] *See Lockhart v. United States*, 546 U.S. 142, 148 (2005); *Marrero*, 417 U.S. at 659, n. 10; *Marcello v. Bonds*, 349 U.S. 302, 310 (1955).

Congress expressly granted the Sentencing Commission emergency Guideline amendment authority effective almost immediately after the FSA's enactment.[9]

In the relatively brief time since the FSA was enacted, numerous district courts across the country have struggled with this very issue. This court has reviewed many opinions issued over the past few months, and both sides present compelling arguments.[10] After careful consideration, however, this court holds that it is clear through necessary implication that Congress intended the FSA to apply to those defendants facing sentencing after November 1, 2010, regardless of whether their conduct occurred pre or post-FSA. Put simply, it would be logically inconsistent for Congress to mandate emergency modified Guidelines by November 1, if it did not intend the changes to take place along with the Guidelines. The changes in the Guidelines are consistent with the new statutory minimum provisions in the FSA. As one district court aptly noted, "the new Guidelines cannot be 'conforming' and 'achieve consistency' (Congress's express mandate) if they are based upon statutory minimums that cannot be effective to a host of sentences over the next five years until the statute of limitations runs on pre-August 3, 2010, conduct."[11]

Moreover, because it is undisputed that the governing Guidelines are those in effect on the day a defendant is sentenced, the only defendants not to reap the benefits of the new law would be

---

[9] FSA § 8.

[10] *Compare United States v. Douglas*, ___ F.Supp.2d ___, 2010 WL 4260221 (D.Me. Oct. 27, 2010) (holding that FSA applies retroactively to pre August 3, 2010, conduct if sentenced after the FSA, and that the saving clause does not require that Congressional intent be explicit; rather, the intent was clear from the preamble and the emergency Guideline change); *United States v. Robinson*, ___F.Supp.2d ___, 2011 WL 379536 (E.D. Tenn. Feb. 4, 2011) (relying on *Douglas* to find that the FSA's new quantity threshold for mandatory minimum 10-year sentence applied retroactively); *with United States v. Santana, et al.*, __F.Suppp.2d ___, 2011 WL 260744 (S.D.N.Y. Jan. 20, 2011) (rejecting *Douglas* and holding that FSA not retroactive because of a lack of express language or necessary implication); *United States v. Peterson*, Nos. 09-155-06, 09-89-01 2011 WL 797317 (N. Dakota Mar. 1, 2011).

[11] *Douglas*, 2010 WL 4260221 at *4.

those facing mandatory minimums prescribed by the old law. To put it another way, because Congress expressly required that the Guidelines undergo emergency amendments by November 1, 2010, many pre-August 3, 2010 offenders will benefit from the changed crack offense levels, so long as the mandatory minimums do not apply to them. When viewed under the guise of Congress's express mandate to amend the Guidelines, it simply does not make logical sense to carve out an exception for those defendants with pre-act conduct and post-November 1, 2010, sentencing who are subject to mandatory minimums under the old law. Rather, it makes more sense that the "consistency" Congress sought to achieve through the emergency directive is a match between the statutory sentences and the Guidelines. Indeed, it would be a "strange definition of 'conforming' and 'consistency' to have these new amended Guidelines go into effect while the old and therefore inconsistent statutory minimums continue."[12] To avoid this result, the United States Supreme Court has held that, when interpreting statutes, exceptions may be implied "where essential to prevent 'absurd results' or consequences obviously at a variance with the policy of the enactment as a whole."[13] Thus, the "grant of emergency amendment authority to the Commission shows that Congress intended and expected that the new crack penalties would be applied" consistent with the enactment of the new Guidelines on November 1, 2010.[14]

### III. Conclusion

Accordingly, this Court concludes that Congress clearly intended the FSA's new mandatory minimum thresholds to apply to all defendants sentenced after November 1, 2010, regardless of the

---

[12] *Id.* at *5.

[13] *United Stats v. Rutherford*, 442 U.S. 544, 552 (1979).

[14] *United States v. Holland*, No 08-10CR48, 2011 WL 98313, at *9 (D. Neb. Jan. 10, 2011).

date of the offense. As such, this Court will apply the FSA's new mandatory minimum thresholds to defendants in this case.

**IT IS THEREFORE ORDERED** that Defendants' Sentencing Memorandums requesting that this Court apply the current mandatory minimum provisions of the FSA are GRANTED.

**IT IS SO ORDERED**.

Dated this 17th day of March, 2011.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE